Battle, J.
 

 The bill of exceptions presents fairly the point, whether the Attorney General, after having asked the defendant’s witness a question tending to his disparagement or disgrace, and which he on that account refused to answer, had the right, in his argument to the jury, to infer from his silence that the witness was unworthy of credit. There is no subject connected with the examination of witnesses on a
 
 nisi prius
 
 trial, whether civil or criminal, upon which there seems to have been more diversity of opinion and practice in the English Courts, than upon the one now under consideration. Judges of great eminence have refused to permit a question tending to degrade a witness to be put to him. Others have permitted the question to be put, but advised the witness that he was not bound to answer it; while most, but not all of them, have held that no inference to the discredit of the witness could be drawn from his refusal to answer. 1 Stark, on Ev., 172, in note. Roscoe’s Crim. Ev., 175
 
 Rose
 
 v.
 
 Blakemore,
 
 21 Eng. C. L. Rep., 465, and the note thereto. In this State we consider it settled by the case of the
 
 State
 
 v.
 
 Patterson,
 
 2 Ire. Rep., 346, that such a question may be asked ; and the Court in that case were inclined to the opinion, though they did not expressly decide, that when the question tended only to the
 
 *359
 
 disparagement or disgrace of the witness, but not to expose him to a criminal prosecution, he was bound to answer it.. Whether, supposing him not bound to answer, any inference to his discredit arising from his silence can be urged in argument to the jury, is now for the first time, so far as we are aware, presented for the decision of this Court. The question is one of much practical importance, and we have considered it with an anxious desire to settle it correctly. The difficulty arose in the outset, from the wish of the Court to protect the witness on the one hand, and on the other, to protect the party against whom he was called, from unreliable testimony. It is manifest that the only mode by which a complete protection can be afforded to the witness, is to prevent the question from being put at all. If that be not done, and he is protected only so far as not to be compelled to answer the question, his credibility will inevitably suffer
 
 some
 
 damage by his silence. It will then deserve serious consideration, whether the slight protection still afforded the witness be sufficient to countervail the necessity which every Court must feel, of endeavoring to protect the 'parties to a cause from corrupt or suspicious testimony. It has been decided in this State, as we have already seen, that the witness cannot claim the only complete and effectual protection, of not having the disparaging question put to him, and we are inclined to think with the very eminent Judges who decided the
 
 State
 
 v. Patterson, that it follows as a necessary consequence, that the witness is bound to answer. But if that be not so, and it is admitted that the witness may refuse to answer, we yet hold that such refusal is the proper subject of comment to the jury. It seems to us to be something very much like absurdity, to permit the manner, the appearance and the whole demeanor of a witness under examination, to be discussed and criticised by counsel, and yet deny them the privilege of remarking upon his refusal to answer a proper question, when that refusal may have more effect upon the jury than everything else relating to his mere demeanor. We cannot believe that such is the correct practice. We think that the silence of the witness under such circumstances, is
 
 “
 
 a fact transpiring in the course of the trial, brought before the jury by one of the parties, and in relation to the question under investigation,” and is therefore a proper sub
 
 *360
 
 ject of remark to the jury, both by the counsel and the Court; see
 
 Bailey
 
 v.
 
 Poole,
 
 13 Ire. Rep., 404. The question put by the Attorney General to the witness, in the case now before us, could not expose him to a criminal prosecution. The only effect it could have, was to disparage him and destroy his credibility before the j ury. And whether he was bound to answer it or not, we think that no error was committed by the Court in permitting the Attorney General to notice his refusal to answer, in the argument to the jury.
 

 The conclusion to which we have come upon this question, renders it unnecessary for us to notice the other matters set forth in the bill of exceptions. It must bo certified to the Superior Court of Law for Northampton county, that there is no error in the record, to the end that the Court may proceed to give judgment according to law.
 

 PeR Curiam. Judgment affirmed.